IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DEBORAH J. MCDANIEL and      )
KENNETH R. MCDANIEL,         )
                             )
            Plaintiffs,      )
                             )
     v.                      )    1:19CV359
                             )
JOHN CRANE, INC., et al.,    )
                             )
            Defendants.      )
```

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion for Summary Judgment filed by Defendant Daniel International Corporation ("Defendant" or "Daniel"), (Doc. 103), to which Plaintiffs have responded, (Doc. 148), and Defendant has replied, (Doc. 155). This motion is ripe for adjudication. For the reasons stated herein, this court will grant Defendant's motion. Because summary judgment is granted as to claims against Daniel, this court will deny as moot the motions in limine filed by Daniel, (Docs. 183, 184, 185, 186, and 189).

### I.  FACTUAL AND PROCEDURAL BACKGROUND

####   A.  Parties

Plaintiff Kenneth McDaniel ("Mr. McDaniel") was employed by Duke Power as an operator at its Belews Creek power plant in

North Carolina from 1974 until the early 2000s. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Br.") (Doc. 104) at 1; Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Resp.) (Doc. 148) at 1.) Plaintiff Deborah McDaniel ("Mrs. McDaniel") is married to Mr. McDaniel. (Defs.' Br. (Doc. 104) at 15; Pls.' Resp. (Doc. 148) at 6.) In July 2017, Mrs. McDaniel was diagnosed with lung cancer, which Plaintiffs argue was the result of exposure to asbestos dust on her husband's work clothing. (Pls.' Resp. (Doc. 148) at 1-2.)

Defendant is a South Carolina corporation whose principal place of business is in South Carolina. (Complaint ("Compl.") (Doc. 1) ¶ 26; Doc. 64 ¶ 9.)

B.  **Procedural History**

Plaintiffs filed the present action in this court on April 1, 2019 against Defendant and several other parties. (Compl. (Doc. 1).) On June 17, 2019, Defendant answered Plaintiffs' Complaint. (Doc. 64.)

On April 23, 2020, Defendant filed the instant Motion for Summary Judgment, (Doc. 103), and accompanying brief, (Doc. 104). Plaintiffs responded on June 8, 2020, (Doc. 148), and Defendant replied on June 22, 2020, (Doc. 155).

C.  **Factual Background**

A majority of the facts are described here, but additional relevant facts will be addressed as necessary throughout the

- 2 -

Case 1:19-cv-00359-WO-JEP    Document 240    Filed 03/22/21    Page 2 of 20

opinion. The majority of facts are not disputed, and any material factual disputes will be specifically addressed in the relevant analysis. The facts described in this summary are taken in a light most favorable to Plaintiffs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Mr. McDaniel worked at Duke Power's Belews Creek plant from June 1974 until November 2005 as a Utility Operator, Control Operator, and Boiler and Powerhouse Operator, (Doc. 148-1 ¶ 5), performing assorted labor tasks throughout the plant. (Id.)

During Mr. McDaniel's employment with Duke Power, the company hired contractors to assist with work at the plant. (Pls.' Resp., Ex. 3, Deposition of Terry Russell Tilley ("Tilley Dep.") (Doc. 148-3) at 12; Pls.' Resp., Ex. 2, Deposition of Kenneth Roland McDaniel ("Ken McDaniel Dep.") (Doc. 148-2) at 7.)[1]

Mr. McDaniel testified that while contractors conducted insulation work, he was at times "as close as right directly under them and around 20 feet" away. (Ken McDaniel Dep. (Doc. 148-2) at 7-8.) The insulation work created dust in the air, which would land on Mr. McDaniel's clothing, (id. at 8), causing him to "look[] like a snowman." (Id.) Mr. McDaniel did not

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

change his clothes or shower prior to coming home. (Id.; (Pls.' Resp., Ex. 4, Deposition of Deborah J. McDaniel ("Deborah McDaniel Dep.") (Doc. 148-4) at 26.)

Mr. and Mrs. McDaniel did not live together until they were married in 1978. (Deborah McDaniel Dep. (Doc. 148-4) at 26.) After they were married, Mrs. McDaniel laundered Mr. McDaniel's clothing, (id. at 25-26), including his work clothes with dust on them, (id. at 8). Mrs. McDaniel would shake out his work clothes and sweep the dust off the floor, which caused her to breathe in the dust. (Id. at 9.) In 2017, Mrs. McDaniel was diagnosed with lung cancer. (See id. at 5, 21.)

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."

- 4 -

McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718-19 (4th Cir. 2003)(citing Matsushita Elec. Indus. Co., 475 U.S. at 586-87). Summary judgment should be granted "unless a reasonable jury could return a verdict in favor of the nonmoving party on the evidence presented." Id. at 719 (citing Liberty Lobby, 477 U.S. at 247-48).

When considering a motion for summary judgment, courts must "construe the evidence in the light most favorable to . . . the non-moving party. [Courts] do not weigh the evidence or make credibility determinations." Wilson v. Prince George's Cnty., 893 F.3d 213, 218-19 (4th Cir. 2018).

As a federal court sitting in diversity, this court is bound to apply the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "In tort actions, North Carolina courts adhere to the rule of lex loci and apply the substantive laws of the state in which the injuries were sustained." Johnson v. Holiday Inn of Am., 895 F. Supp. 97, 98 (M.D.N.C. 1995). Because Plaintiffs' allege that the exposure to asbestos products occurred in North Carolina, (Pls.' Resp. (Doc. 148) at 1-2), this court will apply North Carolina's substantive law.

## III. **ANALYSIS**

Plaintiffs' complaint raises several product liability claims against Defendant arising out of exposure to asbestos, including defective design under N.C. Gen. Stat. § 99B-6, (Compl. (Doc. 1) ¶¶ 48-67); failure to warn under N.C. Gen. Stat. § 99B-5, (id. ¶¶ 68-71); breach of implied warranty, (id. ¶¶ 72-76); and "gross negligence; willful, wanton, and reckless conduct," (id. ¶¶ 77-85). Plaintiffs' exposure arguments center around insulation as the sources of asbestos which caused Mrs. McDaniel's alleged injury. (See Pls.' Resp. (Doc. 148) at 3-6, 16.)

Defendant argues that it is entitled to summary judgment as to all of Plaintiffs' claims, (Def.'s Br. (Doc. 104) at 9), on the grounds that there is no evidence that Defendant exposed Mr. McDaniel to asbestos, (id. at 9-10); Defendant did not owe a duty to Mrs. McDaniel, (id. at 10-19); and that several of the causes of action pleaded against Defendant do not apply to contractor defendants, such as Defendant, (id. at 19-21).

In response, Plaintiffs argue that the evidence shows "that Mrs. McDaniel was exposed to asbestos from her interactions with her husband and his clothing which were covered in asbestos laden dust" and "Daniel does not deny that it served as an insulation contractor at Belews Creek." (Pls.' Resp. (Doc. 148) at 19-20). Plaintiffs argue that Defendant's motion should be

- 6 -

denied because Daniel owed Mrs. McDaniel a duty of care under North Carolina law, (id. at 20-28), and because "Daniel's provision of services included the provision of asbestos-containing products," causing them to be liable under North Carolina law as a "distributor or seller," (id. at 29).

  A.  **Legal Standard**

"To prevail in an asbestos-related product-liability action under North Carolina law, a plaintiff must establish that he was 'actually exposed to the alleged offending products.'" Whitehead v. Air & Liquid Sys. Corp., No. 1:18CV91, 2020 WL 2523169, at *2 (M.D.N.C. May 18, 2020), appeal docketed, No. 20-1676 (4th Cir. June 18, 2020) (quoting Wilder v. Amatex Corp., 314 N.C. 550, 553-54, 336 S.E.2d 66, 68 (1985)). See also Finch v. Covil Corp., 388 F. Supp. 3d 593, 603 (M.D.N.C. 2019), aff'd, 972 F.3d 507 (4th Cir. 2020) (in an action for failure to warn under N.C. Gen. Stat. § 99B-5, finding that plaintiff had "presented more than sufficient evidence from which the jury could conclude that [the defendant] supplied thousands of feet of asbestos-containing pipe insulation used in constructing the . . . plant"); Vanhoy v. Am. Int'l Indus., No. 1:18CV90, 2018 WL 5085712, at *1 (M.D.N.C. Oct. 18, 2018) (in an action for defective design under N.C. Gen. Stat. § 99B-6, finding that the defendant was among those "that supplied the asbestos-containing

talc and/or sold hygiene products containing asbestos-containing talc used by [the plaintiff]").

Consistent with that requirement, the Fourth Circuit has held that a North Carolina asbestos plaintiff "must present 'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff worked.'" Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712, 716 (4th Cir. 1995) (quoting and applying Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir. 1986), to a North Carolina case). "[T]he mere proof that the plaintiff and a certain asbestos product are at the [job site] at the same time, without more, does not prove exposure to that product." Lohrmann, 782 F.2d at 1162.

This standard is known as the "Lohrmann test" or the "frequency, regularity, and proximity test," and "courts have applied it routinely for many years to evaluate proximate cause in asbestos cases arising under North Carolina law." Logan v. Air Prods. & Chems., Inc., No. 1:12-CV-1353, 2014 WL 5808916, at *2 (M.D.N.C. Nov. 7, 2014). See, e.g., Haislip v. Owens-Corning Fiberglas Corp., No. 95-1687, 1996 WL 273686, at *2 (4th Cir. May 23, 1996) (applying Lohrmann to North Carolina case involving a plaintiff with mesothelioma); Yates v. Air & Liquid Sys. Corp., No. 5:12-cv-752-FL, 2014 WL 4923603, at *22-23 (E.D.N.C. Sept.30, 2014) (applying "the Jones/Lohrmann test" to

- 8 -

North Carolina case involving a plaintiff with mesothelioma); Jandreau v. Alfa Laval USA, Inc., No. 2:09-91859-ER, 2012 WL 2913776, at *1 n.1 (E.D. Pa. May 1, 2012) (applying Lohrmann to North Carolina case involving a plaintiff with mesothelioma and predicting that the North Carolina Supreme Court would adopt the Lohrmann test).

This standard applies at summary judgment, as well as at trial. Starnes v. A.O. Smith Corp., Civil No. 1:12-CV-360-MR-DLH, 2014 WL 4744782, at *3 (W.D.N.C. Sept. 23, 2014). "[T]o avoid summary judgment, plaintiffs must put forth a showing of admissible evidence that [the plaintiff] had frequent, regular, and proximate exposure to an asbestos-containing product for which . . . [the defendant] is legally responsible." Id.

### B. Plaintiffs have not forecast evidence that Mrs. McDaniel was exposed to asbestos-containing products for which Defendant was legally responsible

#### 1. Parties' Arguments

Defendant argues that summary judgment is appropriate because there is no evidence that Defendant exposed Mr. McDaniel to asbestos. (Def.'s Br. (Doc. 104) at 9-10.) Defendant argues that "[n]one of the witnesses in this case offered any testimony that Daniel caused either Mr. or Mrs. McDaniel to be exposed to asbestos . . . much less that [the exposure] happened on a regular basis over an extended period of time." (Id. at 9.) Defendant further argues that "[i]n all of the testimony taken

- 9 -

Case 1:19-cv-00359-WO-JEP   Document 240   Filed 03/22/21   Page 9 of 20

in this case, the only mention of Daniel International Corporation . . . is Mr. McDaniel's hearsay statement that 'I heard about Daniels being there [at Belews Creek][,]'" (Def.'s Reply (Doc. 155) at 2-3 (referring to Ken McDaniel Dep. (Doc. 148-2) at 7)), neither Mr. McDaniel nor Mr. Tilley "ever personally saw Daniel at Belews Creek." (Def.'s Reply (Doc. 155) at 3.)

In response, Plaintiffs argue that Daniel contractors worked on asbestos insulation near Mr. McDaniel, producing the dust that landed on his clothing. (Pls.' Resp. (Doc. 148) at 8-9.) Plaintiffs cite Mr. McDaniel's deposition testimony for the proposition that Mr. McDaniel "identified Daniel as a contracting company brought on by Duke Power to perform work at Belews Creek during outages," (Pls.' Resp. (Doc. 148) at 8 (citing Ken McDaniel Dep. (Doc. 148-2) at 7), referring to periods of time in which the turbine and boiler were shut down to conduct repairs. (Pls.' Resp. (Doc. 148) at 4.)

Moreover, Plaintiffs argue that Defendant has previously "confirmed that they were contracted to perform work at Belews Creek in 1985-1986," (id. at 8-9 (citing Def.'s Objs. & Resp. to Pls.' Interrogs. (Doc. 148-5) at 6-7)), and that "Daniel does not deny that it served as an insulation contractor at Belews Creek," (id. at 20). Plaintiffs assert that "[t]he 1985-86 contracts fall within the time that [Mr. McDaniel] would have

- 10 -

been working at Belews Creek," (id. at 9), and that Mr. McDaniel and Mr. Tilley testified that contractors did not take precautions to protect workers from dust during that time period, (id. (citing Ken McDaniel Dep. (Doc. 148-2) at 8, 10; Tilley Dep. (Doc. 148-3) at 8)). Plaintiffs also argue that Defendant "also had labor contracts with Duke Energy in 1972-1974," (id. at 9 (citing Def.'s Objs. & Resp. to Pls.' Interrogs. (Doc. 148-5) at 6-7)), and that these contracts were to "suppl[y] all of the millwrights performing maintenance at Duke facilities, including Belews Creek, (id. at 5 (citing Doc. 148-18; Doc. 148-19)). Ultimately, Plaintiffs argue that this evidence "places [Defendant's] contracts with Belews Creek within the period when [Mr. McDaniel] would not have been protected from asbestos dust at Belews Creek." (Id. at 9.)

Plaintiffs then argue that Mrs. McDaniel's "lung cancer was caused by exposure to asbestos on Kenneth McDaniel's asbestos dust-laden clothing." (Id.; see also id. at 19-20 ("There is no question here that Mrs. McDaniel was exposed to asbestos from her interactions with her husband and his clothing which were covered in asbestos laden dust.").) Plaintiffs argue that their expert, Dr. Steven Haber, "has concluded, to a reasonable degree of medical probability, that Mrs. McDaniel has advanced stage lung cancer caused by exposure to asbestos," (id. at 14 (citing Doc. 148-14 at 23), and that Dr. Haber "references studies that

have concluded that the families of individuals who work with or in close proximity to asbestos-containing materials could be exposed to considerable amounts of asbestos," (id. at 14 (citing Doc. 148-14 at 21-22). Plaintiffs also cite asbestos safety research and other expert testimony in support of their position that asbestos exposure in the workplace poses a foreseeable risk of injury to family members of workers exposed to toxic dust. (Id. at 10-17.)

### 2. Analysis

This court finds that there is no evidence on the record that Defendant's employees worked in proximity to Mr. McDaniel, let alone that they exposed either Mr. McDaniel or Mrs. McDaniel to asbestos.

### a. Testimony of Mr. McDaniel and Mr. Tilley does not Establish that Defendant exposed Mr. McDaniel to Asbestos

First, a reasonable jury could not find that Mr. McDaniel or Mr. Tilley's testimony establishes that Defendant's employees were working in proximity to Mr. McDaniel. During his deposition, Mr. McDaniel stated that he "heard about Daniels being" at Belews Creek, (Ken McDaniel Dep. (Doc. 148-2) at 7), but this was the only time in his deposition that he mentioned Defendant. (Id.) This statement does not prove, without other support, that Defendant's employees were, in fact, present at the plant or that they regularly worked in proximity to him.

- 12 -

Mr. Tilley never named Defendant when asked about contractors at the plant. (See Tilley Dep. (Doc. 148-3).)

Instead, Mr. McDaniel and Mr. Tilley's testimony support the opposite conclusion, that it was Covil, another contractor that conducted insulation work. Throughout his testimony, Mr. McDaniel provided a detailed description of how Covil employees removed the insulation, how close he was to Covil employees while they were working, and the dust that Covil employees created while they worked. (See Ken McDaniel Dep. (Doc. 148-2) at 7-10, 16-17, 29.) When asked whether he was familiar with any other insulation contractor that "[did] work, supplying insulation, other than Covil," Mr. McDaniel answered that Covil was "the only one" for the entire period that he was at the plant. (Id. at 29.)

Mr. McDaniel's strong memory of Covil contractors is bolstered by Mr. Tilley's testimony, who explicitly remembered Covil contractors working at the plant, (Tilley Dep. (Doc. 148-3) at 12), and who also remembered Covil employees as those who replaced the insulation. (Id.) When asked if there were other contractors whose names he could not remember, he stated, "[n]ot at this time, no." (Id.)

For these reasons, this court does not find that Mr. McDaniel or Mr. Tilley's testimony establishes that Mr. McDaniel "had frequent, regular, and proximate exposure to

- 13 -

an asbestos-containing product for which . . . [the defendant] is legally responsible." Starnes, 2014 WL 4744782, at *3.

### b. The 1972 and 1974 Contracts do not Establish Defendant's Liability

Moreover, this court finds that, contrary to Plaintiffs' assertions, not only does Defendant deny that it served as an insulation contractor at Belews Creek, (Def.'s Reply (Doc. 155) at 5), but also the 1972 and 1974 contracts do not establish Defendant's liability, as they do not demonstrate that Defendant performed any insulation work at the facility which could have exposed Mrs. McDaniel to asbestos.

The 1972 contract states that Defendant "shall furnish such necessary supervision, labor, equipment, tools, materials, supplies, and incidentals necessary to perform continuous routine maintenance; operation of utility equipment; and emergency, supplementary, or temporary maintenance services as may be requested by the Owner." (Doc. 148-18 at 2 (emphasis added).) Similarly, the 1974 contract states that the contract "is entered into to provide for the performance of miscellaneous services which [Duke Power] may request [Daniel] to undertake from time to time." (Doc. 148-19 at 4 (emphasis added).)

This court finds that although the plain language of these contracts indicates that Duke Power could request services from Defendant, a reasonable jury could not conclude from the
- 14 -
Case 1:19-cv-00359-WO-JEP   Document 240   Filed 03/22/21   Page 14 of 20

contract's existence that Duke Power did, in fact, request these services from Defendant or, if they did, that the requested services were insulation work. Plaintiffs have not presented evidence that Duke Power requested labor under the terms of the contract. (See Pls.' Resp. (Doc. 148) at 8-9.)

Moreover, this court finds that, even if Plaintiffs could provide evidence that Defendant had provided labor for insulation work under the terms of these contracts and if Plaintiffs could demonstrate that, between 1972 and 1974, Mr. McDaniel was exposed to "a specific product on a regular basis over some extended period of time in proximity to where [Mr. McDaniel] worked," Lohrmann, 782 F.2d at 1162-63, this court would still not find that Defendant was liable to Mrs. McDaniel for labor performed pursuant to these contracts. Mrs. McDaniel testified during her deposition that she did not begin doing Mr. McDaniel's laundry until after they were married in 1978. (Deborah McDaniel Dep. (Doc. 148-4) at 25-26.) Because Plaintiffs' theory of exposure is premised on the idea that Mrs. McDaniel was exposed to asbestos through Mr. McDaniel's clothing, (Pls' Resp. (Doc. 148) at 1), any labor provided prior to 1978 cannot serve as the basis for Defendant's liability.

### c. The 1985-1986 Contract does not Establish Defendant's Liability

Similarly, this court finds that any contracts that Defendant had with Duke Power between 1985 and 1986 do not establish Defendant's liability.

Although Defendant stated in its response to Plaintiffs' interrogatories that, from 1985-1986, Defendant had a "blanket contract order covering construction craft and maintenance personnel as may be required" for Duke Power facilities in North Carolina and for "builders to perform systems maintenance support as may be requested at Duke Power locations in North Carolina," (Def.'s Objs. & Resp. to Pls.' Interrogs. (Doc. 148-5) at 6-7), Defendant also clarified in the interrogatory they "ha[d] not located any documents indicating that it performed any work at the Duke Power Belews Creek Station until 1985, when Daniel appears to have provided builders for maintenance work," (id. at 7), between April and November 1985, (id. at 8).

Courts permit either direct or circumstantial evidence to satisfy the Lohrmann test. See, e.g., Jones, 69 F.3d at 717 at n. 3; Lohrmann, 782 F.2d at 1162-63. Yet, this court does not find that Plaintiffs' citation of any contracts Defendant had with Duke Power provides direct or circumstantial evidence of exposure.

First, this court does not find that any labor provided between April and November 1985 provides direct evidence that Defendant's employees conducted insulation work. The contract language indicates merely that Defendant would provide "builders to work for system maintenance support," (Doc. 148-6 at 8), and Plaintiffs do not explain what that term means. (See Pls.' Resp. (Doc. 148) at 8 9.) This court does not find from the contract's express terms that this work involved insulation removal or installation.

Second, although Plaintiffs may be correct that "[t]he 1985-86 contracts fall within the time that [Mr. McDaniel] would have been working at Belews Creek," (Pls.' Resp. (Doc. 148) at 9), Plaintiffs have not provided circumstantial evidence from which a reasonable jury could conclude that Defendant's work involved asbestos or that Mr. McDaniel was in the area where Defendant's employees might have been working. (See id.)

In the context of asbestos litigation, circumstantial evidence is "exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." Lohrmann, 782 F.2d at 1162-63. Taking the facts in the light most favorable to Plaintiffs, Mr. McDaniel's testimony is that contractors conducting insulation work during outages were another source of asbestos exposure, which were scheduled to occur twice per year, (Ken

McDaniel Dep. (Doc. 148-2) at 7), but could also occur unexpectedly when parts broke down. (Id.) During outages, Mr. McDaniel specifically recalled that it was Covil contractors who conducted repairs during outages and that, at times, he was "right directly under them and around 20 feet" away. (Id. at 8.)

Even if this court were to assume that Mr. McDaniel's testimony demonstrates that the contractors who conducted insulation work or who supplied insulation included Defendant's employees, which would directly contradict Mr. McDaniel's testimony that these were contractors from Covil, (id. at 29), Plaintiffs have not presented evidence from which a reasonable jury could conclude that the exposure occurred between April and November 1985 – the time period covered by the contract – or the frequency with which these exposures occurred. Moreover, to the extent that Defendant recalls "Daniels being there [at Belews Creek]," (id. at 7), a reasonable jury could not conclude from this limited and brief mention of Defendant that Defendant's employees were working during April through November 1985, where they were working in the plant in relation to Mr. McDaniel, or what they were doing. This court finds that the 1985-86 contract falls far short of "evidence of exposure to a specific product on a regular basis over some extended period of time in proximate to where the plaintiff worked." Lohrmann, 782 F.2d at 1162-63.

#### d. **Summary Judgment is Appropriate**

Ultimately, this court finds that summary judgment is appropriate because the evidence "is so one-sided that [the defendant] must prevail as a matter of law." Liberty Lobby, 477 U.S. at 252. Plaintiffs' exposure theory hinges on the premise that Mrs. McDaniel was exposed to asbestos through her husband's clothing, (Pls.' Resp. (Doc. 148) at 9-17), yet Plaintiffs have not presented "specific facts" which would show that there is a "genuine issue for trial" regarding Mr. McDaniel's exposure to asbestos due to the conduct of Defendant's employees. See McLean, 332 F.3d at 718-19 (citing Matsushita Elec. Indus. Co., 475 U.S. at 586-87). Instead, this court finds that Plaintiffs' arguments are "speculative" and "devoid of evidence" from which a reasonable jury could conclude that Mr. McDaniel was "present at the time that [the defendant's] employees were engaged in installing, removing, or replacing asbestos insulation." Connor v. Norfolk S. Ry. Co., No. 1:17CV127, 2018 WL 6514842, at *8 (M.D.N.C. Dec. 11, 2018), appeal docketed, No. 19-1015 (4th Cir. Jan. 4, 2019).

Because Plaintiffs have not "put forth a showing of admissible evidence that [the plaintiff] had frequent, regular, and proximate exposure to an asbestos-containing product for which [the defendant] is legally responsible," Starnes, 2014 WL 4744782, at *3, and exposure to asbestos is an essential element

of product liability claims under North Carolina law, see Wilder, 314 N.C. at 553, 336 S.E.2d at 68, this court need not consider the parties' arguments as to whether Defendant owed a duty to Mrs. McDaniel, (Def.'s Br. (Doc. 104) at 10-19; Pls.' Resp. (Doc. 148) at 20-28), and whether the causes of action apply to Defendant. (Def.'s Br. (Doc. 104) at 19-21; Pls.' Resp. (Doc. 148) at 29.) Accordingly, this court will grant Defendant's motion for summary judgment as to all of Plaintiffs' claims.

## IV. CONCLUSION

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment filed by Defendant Daniel International Corporation, (Doc. 103), is **GRANTED** as to all claims.

**IT IS FURTHER ORDERED** that the motions in limine filed by Defendant Daniel International Corporation, (Docs. 183, 184, 185, 186, and 189), are **DENIED** as **MOOT**.

This the 22nd day of March, 2021.

_____
United States District Judge