IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEBORAH J. MCDANIEL and      )
KENNETH R. MCDANIEL,         )
                             )
          Plaintiffs,        )
                             )
     v.                      )      1:19CV359
                             )
JOHN CRANE, INC., et al.,    )
                             )
          Defendants.        )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion for Summary Judgment filed by Defendant Covil Corporation ("Defendant" or "Covil"), (Doc. 125), to which Plaintiffs have responded, (Doc. 146), and Defendant has replied, (Doc. 157).

Defendant has also filed a Motion in Limine to Exclude Expert Opinion Testimony of Charles Ay, (Doc. 135), to which Plaintiffs have responded, (Doc. 150), and Defendant has replied, (Doc. 158).

These motions are ripe for adjudication. For the reasons stated herein, this court will grant Defendant's motion for summary judgment and the motion in limine to exclude the testimony of Charles Ay. Because summary judgment is granted as

to the claims against Covil Corporation, this court will deny as moot the motions in limine filed by Plaintiffs, (Docs. 187, 188, and 203), and the remaining motions in limine filed by Defendant Covil, (Docs. 137, 192, 195, 199, and 201).

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Parties

Plaintiff Kenneth McDaniel ("Mr. McDaniel") was employed by Duke Power as an operator at its Belews Creek power plant in North Carolina from 1974 until 2005. (Doc. 146-1 ¶ 5.) Plaintiff Deborah McDaniel ("Mrs. McDaniel") is married to Mr. McDaniel. (Doc. 127-20 at 3.)[1] In July 2017, Mrs. McDaniel was diagnosed with lung cancer, which Plaintiffs argue was the result of exposure to asbestos through her husband's contaminated work clothing. (Pls.' Resp. in Opp'n to Mot. for Summ. J. ("Pls.' Resp.") (Doc. 146) at 1.)

Defendant is a South Carolina corporation whose principal place of business is in South Carolina. (Complaint ("Compl") (Doc. 1) ¶ 24; Doc. 48 ¶ 11.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

## B.  **Procedural History**

Plaintiffs filed the present action in this court on April 1, 2019 against Defendant and several other parties. (Compl. (Doc. 1).) On May 10, 2019, Defendant answered Plaintiffs' Complaint. (Doc. 48.)

On May 8, 2020, Defendant filed the instant Motion for Summary Judgment, (Doc. 125), and accompanying brief, (Doc. 126). On May 11, 2020, Defendant filed a corrected brief. (Def.'s Br. in Supp. of Mot. for Summ. J. ("Def.'s Br.") (Doc. 127).) Plaintiffs responded on June 8, 2020, (Pls.' Resp. (Doc. 146)), and Defendant replied on June 22, 2020, (Def.'s Reply Br. in Supp. of Mot. for Summ. J. ("Def.'s Reply Br.") (Doc. 157)).

On May 22, 2020, Defendant filed a Motion in Limine to Exclude Expert Opinion Testimony of Charles Ay, (Doc. 135), and accompanying brief, (Def.'s Br. in Supp. of Mot. in Lim. to Exclude Expert Opinion Testimony of Charles Ay ("Def.'s Mot. in Lim. Br.") (Doc. 136)). Plaintiffs responded on June 12, 2020, (Pls.' Consolidated Resp. to Defs.' Mots. in Lim. to Exclude Expert Testimony of Charles Ay ("Pls.' Resp. to Mot. in Lim.") (Doc. 150), and Defendant replied on June 26, 2020, (Doc. 158).

## C.  **Factual Background**

A majority of the facts are described here, but additional relevant facts will be addressed as necessary throughout the

opinion. The majority of facts are not disputed, and any material factual disputes will be specifically addressed in the relevant analysis. The facts described in this summary are taken in a light most favorable to Plaintiffs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Mr. McDaniel worked at Duke Power's Belews Creek plant from June 1974 until November 2005 as a Utility Operator, Control Operator, and Boiler and Powerhouse Operator, (Doc. 146-1 ¶ 5), performing assorted labor tasks throughout the plant, (id.) As a utility operator, Mr. McDaniel was responsible for opening and closing valves, changing oil in pieces of equipment, and removing insulation to obtain access for repair work on equipment. (Pls.' Resp., Ex. 2, Deposition of Kenneth Roland McDaniel ("Ken McDaniel Dep.") (Doc. 146-2) at 6.) About four to six years after he began working at Belews Creek in 1974, Mr. McDaniel began working primarily in the control room, "out of the direct impact of the plant." (Id.)

During Mr. McDaniel's employment with Duke Power, the company hired contractors to assist with work at the plant. (Id. at 7.) Daniel International Corporation, Westinghouse, and Defendant were contractors hired by Duke Power, and they, as well as Duke Power employees, (id. at 10), would conduct work during outages, which were periods of time when the boiler would

- 4 -

be shut down so that workers could access the turbine, (id. at 7). Mr. McDaniel recalled that there were approximately two scheduled outages per year, as well as unexpected outages, which might last up to a few months. (Id.)

Mr. McDaniel recalled that Duke Power's employees typically removed the insulation, while Covil employees typically installed new insulation after repairs were completed. (See id. at 16-17.) Mr. McDaniel also testified that occasionally "there were times when Covil had to remove" the insulation, but that he did not think insulation removal was in their job description. (Id. at 16.) In those instances where Covil employees conducted insulation work, Mr. McDaniel testified that he was at times "as close as right directly under them and around 20 feet" away. (Id. at 7-8.)

Mr. McDaniel testified that his supervisors at Duke Power instructed him to assist with insulation removal, by removing insulation that encased the turbine or the insulating blankets that were on the throttle valves. (Id. at 19-20.) One of Mr. McDaniel's co-workers and another operator at Belews Creek, Terry Tilley, also stated that, between the 1970s and 1990s, operators removed insulation to help with repairs in the normal course of their work. (Pls.' Resp., Ex. 3, Deposition of Terry Russell Tilley ("Tilley Dep.") (Doc. 146-3) at 5.) Mr. McDaniel

- 5 -

described the blankets insulation as being encased in a flexible metal fiber that "could be moved easily and could be easily put together," like a "mesh." (Ken McDaniel Dep. (146-2) at 27.) This material would be removed, set aside, and reinstalled once repairs were completed. (See id. at 19-20, 27.) Mr. McDaniel testified that other Duke Power employees were responsible for taking off the solid block insulation from the drive turbines and boiler feed pump, but he was not involved in that work, as he only removed blanket insulation. (Id. at 28.)

Mr. McDaniel said that he did not know whether any of the insulation at the plant to which he was exposed had asbestos in it. (Id. at 16.) He did not know until the mid-1990s that there may be asbestos in the plant, when Duke Power began requiring employees to wear white Tyvek suits. (See id. at 10-11, 17.) Mr. Tilley testified that, when he began working at the plant in 1977, he did not "originally" have any personal knowledge as to whether any of the insulation that was installed during the construction of the plant might contain asbestos, (Tilley Dep. (Doc. 146-3) at 8, 11), and that "it was several years later" during the second half of his career, during the late 1980s and early 1990s when he "first started hearing about it," (id. at 8). He was not personally involved with specifying the types of insulation products that were used in the repairs. (Id. at 13.)

- 6 -

Mr. Tilley stated that it is not possible to determine whether any insulating material contains asbestos by sight only. (Id. at 15-16.)

Insulation work created dust in the air, which would land on Mr. McDaniel's clothing, (Ken McDaniel Dep. (146-2) at 8), causing him to "look[] like a snowman." (Id.) Mr. McDaniel did not change his clothes or shower prior to coming home. (Id.; Pls.' Resp., Ex. 4, Deposition of Deborah J. McDaniel ("Deborah McDaniel Dep.") (Doc. 146-4) at 26.)

Mr. and Mrs. McDaniel did not live together under they were married in 1978. (Deborah McDaniel Dep. (Doc. 146-4) at 26.) After they were married, Mrs. McDaniel laundered Mr. McDaniel's clothing, (id. at 25-26), including his work clothes with dust on them, (id. at 8). Mrs. McDaniel would shake out his work clothes and sweep the dust off the floor, which caused her to breathe in the dust. (Id. at 9.) In 2017, Mrs. McDaniel was diagnosed with lung cancer. (See id. at 5; 21.)

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-

sided that one party must prevail as a matter of law." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving
party bears the initial burden of demonstrating "that there is
an absence of evidence to support the nonmoving party's case."
Celotex Corp., 477 U.S. at 325. If the "moving party discharges
its burden . . ., the nonmoving party must come forward with
specific facts showing that there is a genuine issue for trial."
McLean v. Patten Cmtys., Inc., 332 F.3d 714, 718-19 (4th Cir.
2003)(citing Matsushita Elec. Indus. Co., 475 U.S. at 586-87).
Summary judgment should be granted "unless a reasonable jury
could return a verdict in favor of the nonmoving party on the
evidence presented." Id. at 719 (citing Liberty Lobby, 477 U.S.
at 247-48).

When considering a motion for summary judgment, courts must
"construe the evidence in the light most favorable to . . . the
non-moving party. [Courts] do not weigh the evidence or make
credibility determinations." Wilson v. Prince George's Cnty.,
893 F.3d 213, 218-19 (4th Cir. 2018).

As a federal court sitting in diversity, this court must
apply the choice-of-law rules of the state in which it sits.
Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).
"In tort actions, North Carolina courts adhere to the rule of
lex loci and apply the substantive laws of the state in which

- 8 -

the injuries were sustained." Johnson v. Holiday Inn of Am., 895 F. Supp. 97, 98 (M.D.N.C. 1995). Because Plaintiffs' allege that the exposure to asbestos products occurred in North Carolina, this court will apply North Carolina's substantive law.

## III. **ANALYSIS**

### A. **Motion in Limine to Exclude Charles Ay's Testimony**

Following the filing of Defendant's Motion for Summary Judgment, (Doc. 125), Defendant filed a Motion in Limine to exclude the testimony Charles Ay, (Doc. 135).

Mr. Ay's opinion testimony consists of his declaration, deposition, and affidavit. (Def.'s Mot. in Lim. Br., Ex. 1, Declaration of Charles Ay ("Ay Decl.") (Doc. 136-2); Ex. 2, Excerpts from the Deposition of Charles Ay ("Ay Dep.") (Doc. 136-3); and Ex. 3, Affidavit of Charles Ay ("Ay Report") (Doc. 136-4).)

In his expert report, Mr. Ay opines that "Mr. McDaniel's exposures included exposures to asbestos from the work performed by Covil Insulation contractors who cut, removed, and repaired insulating materials in a manner that did not contain the release of asbestos fibers." (Ay Report (Doc. 136-4) at 3.) Mr. Ay also opines that "Mr. McDaniel was also directly exposed to asbestos-containing insulation during his job which was originally supplied and installed by Covil Insulating

- 9 -

contractors" and that, "[w]hile insulating exposures throughout the facility would be fairly routine, Mr. McDaniel was also [exposed] to large quantities of asbestos fiber during maintenance shutdowns, which would include exposures to the insulating materials used on the Westinghouse turbines at the Belews Creek facility," for which Covil "installed asbestos-containing insulation and cloth" and conducted maintenance. (Id.) Mr. Ay concludes that "[e]ach of these exposures represents systematic, years-long and repeatedly re-entrained exposures to asbestos to both Mr. and Mrs. McDaniel in their family homes." (Id. at 4.)

Although Defendant does not dispute the admissibility of Mr. Ay's testimony in its opening brief, (see Def.'s Br. (Doc. 127)), Plaintiffs cite Mr. Ay's testimony in support of their position that "the insulation that Covil used at Duke's Belews Creek facility contained asbestos" and that "Mr. McDaniel was occupationally exposed primarily to asbestos-containing insulating material." (Pls.' Resp. (Doc. 146) at 14.) In their reply, Defendant argues that "Mr. Ay's opinion regarding the asbestos content of insulation at Belews Creek is speculative and should be excluded," citing the arguments raised in their motion in limine and brief. (Def.'s Reply (Doc. 157) at 5 (citing Docs. 135, 136).)

Because summary judgment must be determined based on consideration of "admissible evidence," Fed. R. Civ. P. 56, this court will first address Defendant's motion in limine regarding Mr. Ay's testimony before reaching Defendant's motion for summary judgment.[2]

### 1.  <u>Legal Standard</u>

Federal law governs the admissibility of expert testimony. <u>See</u> <u>Bryte ex rel. Bryte v. Am. Household, Inc.</u>, 429 F.3d 469, 476 (4th Cir. 2005). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] Since filing its motion for summary judgment, Defendant has also filed other motions in limine to exclude evidence and expert testimony. (<u>See</u> Docs. 137, 192, 195, 199, 201.) However, unlike Charles Ay's testimony, the parties do not contest the admissibility of this evidence in the motion for summary judgment, (<u>see</u> Def.'s Br. (Doc. 127); Pls.' Resp. (Doc. 146); Def.'s Reply (Doc. 157). Thus, this court need not resolve these motions prior to addressing the motion for summary judgment.

- 11 -

Fed. R. Evid. 702.

An expert's testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 260-61 (4th Cir. 1999) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (internal quotation marks omitted)). "The first prong of this inquiry [under Federal Rule of Evidence 702] necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable — that is, whether it is supported by adequate validation to render it trustworthy. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue." Westberry, 178 F.3d at 260 (citations omitted).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court laid out a list of non-exhaustive factors that a court may consider in determining whether to admit an expert opinion as reliable, including (1) "[w]hether a theory or technique can be (and has been) tested," (2) "[w]hether it has been subjected to peer review and publication," (3) "[w]hether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's

operation," and (4) "[w]hether the theory or technique enjoys general acceptance within a relevant scientific community." Kumho Tire Co., 526 U.S. at 149-50 (citing Daubert, 509 U.S. at 592-94) (internal quotations, citations, and modifications omitted). The "gatekeeping" obligation from Daubert applies not only to "scientific" testimony, but to all expert testimony. Id. at 138. "The Daubert factors do not constitute a definitive checklist or test, and the gatekeeping inquiry must be tied to the particular facts." Id.

In its gate-keeping capacity, this court remains conscious of "two guiding, and sometimes competing, principles." Westberry, 178 F.3d at 261.

> On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence. And, the court need not determine that the expert testimony a litigant seeks to offer into evidence is irrefutable or certainly correct. As with all other admissible evidence, expert testimony is subject to being tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." On the other hand, the court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to "be both powerful and quite misleading." And, given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded.

Id. (citations omitted).

- 13 -

## 2. **Parties' Arguments**

First, Defendant argues that Mr. Ay's testimony should be excluded because it is based on insufficient facts or data, (Def.'s Mot. in Lim. Br. (Doc. 136) at 6-8), and because it did not result from the application of any reliable methodology, (id. at 8-13). Defendant argues that, at best, "Mr. Ay could testify only that Mr. McDaniel 'had the opportunity to be exposed every day,'" (id. at 7 (citing (Ay Dep. (Doc. 136-3) at 14)), and that "[b]ecause of these limitations, Mr. Ay's conclusory opinions . . . that Mr. McDaniel was exposed to asbestos due to work performed or material supplied by Covil should be excluded," (id.).

Second, Defendant argues that Mr. Ay's testimony regarding Mrs. McDaniel's take-home exposure should be excluded because he relies on unreliable and speculative methodology to conclude that Mrs. McDaniel was exposed to asbestos and this asbestos caused her illness. (Id. at 8-13.) In addition to assuming that Mr. McDaniel was exposed to asbestos-containing insulation above the Permissible Exposure Limit ("PEL"), (id. at 11 (citing Ay Dep. (Doc. 136-3) at 14)), Defendant argues that Mr. Ay cites anecdotal observations in support of his opinion regarding Mrs. McDaniel's take-home exposure, (id. at 12 (citing Ay Report (Doc. 136-4) at 3-4)), which is not permissible under Daubert.

(Id.) Moreover, Defendant argues that Mr. Ay is not an industrial hygienist and is not qualified to opine regarding the nature and quantity of Ms. McDaniel's alleged take-home exposures. (Id. at 2.)

In response, Plaintiffs argue that Defendant's motion should be denied because "they do not identify the particular opinion or testimony sought to be excluded." (Pls.' Resp. to Mot. in Lim. (Doc. 150) at 3.) Plaintiffs also argue that Defendant's assertions regarding Mr. Ay's qualifications are invalid, because although he is not a certified industrial hygienist, he has extensive personal experience as an asbestos insulator and certified asbestos consultant. (Id. at 4.) Plaintiffs argue that "[s]tate and federal courts across the country have accepted Ay's qualifications for the particular type of opinions he provides and admitted his testimony in hundreds of asbestos cases, including those involving 'take home' exposure[.]" (Id. at 4-5).

Finally, Plaintiffs argue that "Ay's testimony is only intended to help the jury understand how [Mr. McDaniel's] work led to Mrs. McDaniel's exposures to asbestos." (Id. at 5.) Responding to Defendant's arguments that Mr. Ay's testimony is speculative, Plaintiffs argue that Mr. Ay "bases his opinions on case-specific documents and other evidence pertaining to [Mr.

- 15 -

McDaniel's] occupational exposures as well as Mrs. McDaniel's undisputed testimony about interacting with [Mr. McDaniel] at home and laundering his clothing." (Id.) Plaintiffs also argue that Mr. Ay relies, as is permitted for experts, "on his own experience and understanding of what types of asbestos products were used in steam plants during the pertinent times, how asbestos exposures occur in the field, his own training and background in asbestos insulation removal, and . . . scientific literature documenting asbestos fiber release." (Id.)

### 3. **Mr. Ay's testimony should be excluded**

This court first finds, contrary to Plaintiffs' assertions, (id. at 3-4), that Defendant's motion identifies specific opinions that it seeks to exclude, namely Mr. Ay's opinion Mr. McDaniel was "directly exposed to asbestos-containing insulation due to work performed and materials supplied by Covil at Belews Creek," (Def.'s Mot. in Lim. Br. (Doc. 136) at 2), and that Mrs. McDaniel's illness was the result of her take-home exposure. (Id.) This court also finds that Defendant identifies specific excerpts of testimony to be excluded throughout its opening brief. (Id. at 3-13.) Accordingly, this court does not find that it is unable "to know exactly what evidence [Defendant is] trying to preclude and the context in which it might be

offered at trial." (Pls.' Resp. to Mot. in Lim. (Doc. 150) at 4.)

This court further finds that Mr. Ay's testimony should be excluded because his opinions do not meet the standard for expert testimony established under Daubert and Federal Rule of Evidence 702.

> a. **This court will exclude Mr. Ay's testimony regarding Mr. McDaniel's exposure to asbestos for which Defendant was responsible**

This court finds that Mr. Ay's testimony regarding Mr. McDaniel's exposure to asbestos for which Defendant was responsible should be excluded because it is not based on sufficient facts or data, see Fed. R. Evid. 702, and instead, was based on "subjective belief" and "unsupported speculation." Daubert, 509 U.S. at 590. See also Oglesby v. Gen. Motors. Corp., 190 F.3d 244, 250 (4th Cir. 1999) ("A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods.").

First, this court finds that witness testimony does not serve as a basis for Mr. Ay's opinion that Mr. McDaniel was exposed to asbestos for which Defendant was responsible. Mr. Ay testified that he relied on the testimony of Mr. McDaniel and

- 17 -

his co-worker, Mr. Tilley, to form his opinion. (Ay Dep. (Doc.
136-3) at 6-7.) Although Mr. Ay says that he has the ability to
recognize asbestos-containing insulation materials, (Ay Decl.
(Doc. 136-2) at 46), Mr. Tilley and Mr. McDaniel's testimony
indicates that they do not, as neither witness identified any
material with which they worked or were exposed as containing
asbestos. (See Ken McDaniel Dep. (Doc. 146-2) at 10-11, 16-17;
Tilley Dep. (Doc. 146-3) at 8.) Mr. Ay recognized that neither
Mr. McDaniel nor Mr. Tilley testified that they were aware until
the mid-1990s that some asbestos had previously been present in
the Belews Creek plant. (Ay Dep. (Doc. 136-3) at 24-25.)

This court does not find that their limited description of
the material, in which they described it as white and a dust,
(see, e.g., Ken McDaniel Dep. (Doc. 146-2) at 8; Tilley Dep.
(Doc. 146-3) at 8), provides a sufficient basis for Mr. Ay to
identify this material as asbestos for which Defendant was
responsible. As Mr. Ay acknowledges, non-asbestos material used
in pipe insulation can be white or off-white, (see Ay Decl.
(Doc. 136-2) at 47 (describing calcium silicate, which can be
asbestos or non-asbestos, as well as styrofoam, and fiberglass
as being white or off-white)), and Mr. Ay did not conduct any
evaluation of whether Mr. McDaniel worked with or in proximity
to asbestos insulation, other than being aware that Mr. McDaniel

- 18 -

"worked around a lot of white dusty material, and he took that dusty material home . . . ." (Ay Dep. (Doc. 136-3) at 42.)

Although an expert's experience and training "is useful as a guide to interpreting . . . facts, . . . it is not a substitute for them." Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 242 (1993). This court does not find that Mr. Tilley or Mr. McDaniel's description of the dust at Belews Creek provides sufficient facts from which Mr. Ay could interpret that the insulation contained asbestos, and Mr. Ay did not provide any additional basis for his opinion. (See Ay Report (Doc. 136-4) at 2.) For these reasons, this court does not find that Mr. Tilley or Mr. McDaniel's testimony provides a basis for Mr. Ay's belief that Defendant's work exposed Mr. McDaniel in any manner to asbestos or that Mr. McDaniel was exposed to asbestos-containing products that Defendant supplied.

Second, this court finds that Duke Power records regarding materials used at the plant do not serve as a basis for Mr. Ay's opinion Mr. McDaniel was exposed to asbestos-containing products for which Defendant was responsible. (See Ay Dep. (Doc. 136-3) at 15.) Mr. Ay never describes any familiarity with Defendant's work or products at Belews Creek other than what exists in the record in this matter. (See Ay Report (Doc. 136-4) at 2.) Mr. Ay

- 19 -

stated that he was aware that asbestos-free calcium aluminate block insulation and pipe covering had been used at the plant. (Ay Dep. (Doc. 136-3) at 16-22, 26-27.) He also stated that he was aware, based on bulk sampling reports from 1985-1990, that there was asbestos in some, but not all areas of the plant, (id. at 28-40), and he did not conduct any samples or analysis to estimate what percentage of the installed insulation contained asbestos, (id. at 41). He also stated that he had "no personal knowledge as to where [Defendant] installed the asbestos." (Id. at 15.) Indeed, when asked to state why he believed Defendant installed asbestos-containing insulation, Mr. Ay testified "[g]iven the fact that Covil was the insulating contractor, given the fact that you had asbestos sampling that showed it present, the only thing I'm left with is to assume that Covil did install asbestos as the plant." (Id. (emphasis added).) This direct acknowledgment, as well as Mr. Ay's other statements, supports a finding that Mr. Ay's opinion regarding Defendant's role in installing asbestos insulation at the plant was "unsupported speculation," Daubert, 509 U.S. at 590, that is not supported by the Duke Power records. For this reason, this court does not find that Mr. Ay's opinion is supported by specific facts, and thus, is inadmissible under Daubert.

This court finds that Mr. Ay's testimony is best summarized by his own statement that Mr. McDaniel "had the opportunity to be exposed every day." (Ay. Dep. (Doc. 136-3) at 14.) The opportunity to be exposed to asbestos is not the same, however, as actual exposure to asbestos by a specific contractor. "Daubert aims to prevent expert speculation," Bryte, 429 F.3d at 477, and this court's review of Mr. Ay's testimony indicates that Mr. Ay explicitly indicated that his beliefs regarding Mr. McDaniel's exposure to asbestos for which Defendant was responsible were unsupported speculation. For these reasons, this court finds that this testimony should be excluded.

**b.  <u>This court will exclude Mr. Ay's testimony regarding Mrs. McDaniel's take-home exposure</u>**

This court further finds that Mr. Ay's testimony regarding Mrs. McDaniel's take-home exposure should be excluded. This court finds that Mr. Ay's take-home theory rests on Mr. McDaniel having been exposed to asbestos containing products. (Ay Dep. (Doc. 136-3) at 3.) Yet, this court finds that his belief that Mr. McDaniel was exposed to asbestos for which Defendant is responsible is grounded in unsupported speculation. See discussion supra III.A.2.a. Accordingly, this court finds that Mr. Ay's testimony regarding Mrs. McDaniel's take-home exposure is unsupported speculation which has a "greater potential to

- 21 -

mislead than to enlighten." <u>Westberry</u>, 178 F.3d at 261. For this reason, this court finds that it should be excluded.

This court will grant Defendant's motion to exclude Mr. Ay's testimony, (Doc. 135), and this court will not consider Mr. Ay's testimony when resolving Defendant's motion for summary judgment.

### B.  <u>Motion for Summary Judgment</u>

Plaintiffs' complaint raises several product liability claims against Defendant arising out of exposure to asbestos, including defective design under N.C. Gen. Stat. § 99B-6, (Compl. (Doc. 1) ¶¶ 48-67); failure to warn under N.C. Gen. Stat. § 99B-5, (<u>id.</u> ¶¶ 68-71); breach of implied warranty, (<u>id.</u> ¶¶ 72-76); and "gross negligence; willful, wanton, and reckless conduct," (<u>id.</u> ¶¶ 77-85). Plaintiffs also allege a claim for punitive damages. (<u>Id.</u> ¶¶ 91-95.) Plaintiffs' exposure theory rests on the premise that Mrs. McDaniel's alleged injuries resulted from asbestos dust on Mr. McDaniel's clothing generated by insulation work at Belews Creek. (<u>See</u> Pls.' Resp. (Doc. 146) at 1-3.)

Defendant argues that it is entitled to summary judgment as to all of Plaintiffs' claims, (Def.'s Br. (Doc. 127) at 22), on the grounds that Plaintiffs cannot prove that Mr. McDaniel was exposed to asbestos-containing products attributable to Covil

- 22 -

and that this exposure occurred with sufficient frequency, regularity, and proximity to Mr. McDaniel, (id. at 11-16); Defendant did not owe a duty to Mrs. McDaniel, (id. at 16-20); and that punitive damages are not appropriate. (id. at 20-22).

### 1. Plaintiffs have not created a genuine dispute of material fact that Mr. McDaniel was exposed to asbestos for which Defendant was responsible

#### a. Legal Standard

In an action for an asbestos-related tort under North Carolina law, "[i]t will not be enough for plaintiff simply to show that various products were shipped to various job sites on which he worked." Wilder v. Amatex Corp., 314 N.C. 550, 554, 336 S.E.2d 66, 68 (1985). "To prevail in an asbestos-related product-liability action under North Carolina law, a plaintiff must establish that he was 'actually exposed to the alleged offending products.'" Whitehead v. Air & Liquid Sys. Corp., No. 1:18CV91, 2020 WL 2523169, at *2 (M.D.N.C. May 18, 2020), appeal docketed, No. 20-1676 (4th Cir. June 18, 2020) (quoting Wilder, 314 N.C. at 553-54, 336 S.E.2d at 68). See also Finch v. Covil Corp., 388 F. Supp. 3d 593, 604 (M.D.N.C. 2019), aff'd, 972 F.3d 507 (4th Cir. 2020) (in an action for failure to warn under N.C. Gen. Stat. § 99B-5, finding that plaintiff had "presented more than sufficient evidence from which the jury could conclude that [the defendant] supplied thousands of feet of asbestos-

- 23 -

containing pipe insulation used in constructing the . . .

plant"); Vanhoy v. Am. Int'l Indus., No. 1:18CV90, 2018 WL

5085712, at *1 (M.D.N.C. Oct. 18, 2018) (in an action for

defective design under N.C. Gen. Stat. § 99B-6, finding that the

defendant was among those "that supplied the asbestos-containing

talc . . . used by [the plaintiff]").

     Consistent with that requirement, the Fourth Circuit has

held that a North Carolina asbestos plaintiff "must present

'evidence of exposure to a specific product on a regular basis

over some extended period of time in proximity to where the

plaintiff worked.'" Jones v. Owens-Corning Fiberglas Corp., 69

F.3d 712, 716 (4th Cir. 1995) (quoting and applying Lohrmann v.

Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir.

1986), to a North Carolina case). "[T]he mere proof that the

plaintiff and a certain asbestos product are at the [job site]

at the same time, without more, does not prove exposure to that

product." Lohrmann, 782 F.2d at 1162.

     This standard is known as the "Lohrmann test" or the

"frequency, regularity, and proximity test," and "courts have

applied it routinely for many years to evaluate proximate cause

in asbestos cases arising under North Carolina law." Logan v.

Air Prod. & Chems., Inc., No. 1:12-CV-1353, 2014 WL 5808916, at

*2 (M.D.N.C. Nov. 7, 2014). See, e.g., Haislip v. Owens-Corning

- 24 -

Fiberglas Corp., No. 95-1687, 1996 WL 273686, at *2 (4th Cir. May 23, 1996) (applying Lohrmann to North Carolina case involving a plaintiff with mesothelioma); Yates v. Air & Liquid Sys. Corp., No. 5:12-cv-752-FL, 2014 WL 4923603, at *22-23 (E.D.N.C. Sept.30, 2014) (applying "the Jones/Lohrmann test" to North Carolina case involving a plaintiff with mesothelioma); Jandreau v. Alfa Laval USA, Inc., No. 2:09-91859-ER, 2012 WL 2913776, at *1 n.1 (E.D. Pa. May 1, 2012) (applying Lohrmann to North Carolina case involving a plaintiff with mesothelioma and predicting that the North Carolina Supreme Court would adopt the Lohrmann test).

"[T]o survive summary judgment, Plaintiff must show that the record contains sufficient facts for a reasonable juror to conclude that [the plaintiff] was actually exposed to [defendant]-attributable asbestos as required by Wilder, and that this exposure occurred with sufficient frequency, regularity, and proximity to satisfy Lohrmann." Young v. Am. Talc Co., No. 1:13CV864, 2018 WL 9801011, at *3 (M.D.N.C. Aug. 3, 2018); see also Starnes v. A.O. Smith Corp., Civil No. 1:12-CV-360-MR-DLH, 2014 WL 4744782, at *3 (W.D.N.C. Sept. 23, 2014) ("[T]o avoid summary judgment, plaintiffs must put forth a showing of admissible evidence that [the plaintiffs] had frequent, regular, and proximate exposure to an asbestos-

- 25 -

containing product for which . . . [the defendant] is legally responsible.").

"[T]he non-movant must bring forth 'fact-specific and not merely speculative' evidence establishing the cause of her injury." Ross v. F.D.I.C., 625 F.3d 808, 817 (4th Cir. 2010) (quoting Driggers v. Sofamor, S.N.C., 44 F. Supp. 2d 760, 765 (M.D.N.C. 1998)). "[T]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough." Id. (internal citations and quotations omitted). This can take the form of direct evidence which places a plaintiff in contact with an asbestos-containing product, Jones, 69 F.3d at 717, or circumstantial evidence that establishes that plaintiff was "in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area, not just the product handlers, inhaled." Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods., 786 F.2d 1225, 1228 (4th Cir. 1986).

### b. **Parties' Arguments**

Defendant argues that summary judgment is appropriate because there is no evidence that Defendant exposed Mr. or Mrs. McDaniel to asbestos. (Def.'s Br. (Doc. 127) at 14-16.)

Defendant argues that "[m]ultiple lines of evidence show that a significant portion of the asbestos insulation in the Belews creek plant was asbestos-free," (id. at 15), and that "while Mr. McDaniel testified to working with or near insulation that created dusty conditions, he did not testify to working with or near any insulation that he knew to contain asbestos, or to being near Covil employees when they were working with asbestos-containing insulation." (Id. (citing Doc. 127-16 at 13-14)). Defendant further argues that, "[a]t best, the evidence shows that Mr. McDaniel worked in a plant where a portion of the products supplied by Covil might have contained some asbestos, but he does not know whether he was exposed to it," (id.), which is insufficient to survive summary judgment under the Lohrmann test, (id. at 15-16).

In response, Plaintiffs argue that "[t]here is no question" that Mr. McDaniel was exposed to asbestos because "Mr. McDaniel and his coworker testified that insulation contractors like Covil were hired to perform insulation work . . . and Mr. McDaniel would be working in close proximity." (Pls.' Resp. (Doc. 146) at 23.) Plaintiffs argue that the dust created by the removal and installation of thermal insulation landed on Mr. McDaniel's clothing, causing his wife to be exposed to "substantial amounts" of asbestos when she cleaned his clothing.

- 27 -

(Id.) Plaintiffs also assert that Defendant "does not deny that it served as an insulation contractor at Belews Creek," "experts have confirmed that Mrs. McDaniel has an asbestos-related cancer," and "testimony from Mr. Ay and documents from Duke Power confirmed that hundreds of thousands of linear feet of asbestos was removed from the Belews Creek facility --- insulation that was installed during the time period that Ken McDaniel worked at the facility." (Id. at 23-24.)

c.  **Analysis**

This court finds that there is not direct or circumstantial evidence on the record from which a reasonable jury could conclude that Mr. McDaniel was exposed with frequency, regularity, and proximity to asbestos for which Defendant was legally responsible.

i.  **Products supplied by Defendant**

Defendant asserts that all calcium silicate materials had non-asbestos binders and that the calcium silicate materials for ducts, feedwater heaters, and piping were asbestos-free. (See Def.'s Br. (Doc. 127) at 15.) Defendant asserts that it did supply a few asbestos containing products, namely asbestos finishing cloth, asbestos paper, and asbestos yarn. (Id. at 4-5 (citing Doc. 127-7 at 5-8).) Plaintiffs construe these citations as Defendants asserting "that the Duke Belews facility was

- 28 -

asbestos free," which Plaintiffs contest, citing "documents from Duke Power [that] demonstrate that asbestos-containing insulation was indeed used in multiple areas of the facility." (Pls.' Resp. (Doc. 146) at 6.)

Given the parties' dispute, this court makes the following findings of fact about the products Defendant supplied and which contained asbestos.

First, based on the undisputed evidence and while drawing all inferences in favor of Plaintiffs, this court finds that the calcium silicate products that Defendant supplied did not contain asbestos. In April 1972, Duke Power asked bidders for the heat insulation portion of the project, which included Defendant and three other bidders, to provide "an alternate bid on some of the insulation due to regulations added to the Occupational Safety and Hazards Act affecting the use of materials containing asbestos." (Doc. 127-2 at 2.) After Defendant and one other bidder notified Duke Power that "calcium silicate insulation materials with non-asbestos binders [would] be available for Belews Creek," (Doc. 127-3 at 2), Duke Power asked the bidders to quote "asbestos-free calcium silicate materials for ducts, feedwater heaters and piping where

thermobestos[3] was originally specified," (id.; see also Doc. 127-4 at 2). On August 18, 1972, Defendant wrote to Duke Power to confirm that Covil would use "Owens Corning Asbestos Free Calcium Silicate Pipe Covering and Block for the ducts, feed water heaters, and piping where Thermobestos was originally specified, without any increase in price to the owner except normal yearly factory increases." (Doc. 127-5 at 2.)

On December 28, 1972, Duke Power's agent, Mill-Power Supply Co., issued a purchase order to Defendant to provide labor and insulation materials to be furnished in accordance with Duke Power's specification BCS-1206.10 for heat insulation, with certain stated exceptions, including that "ALL CALCIUM SILICATE MATERIALS ARE TO HAVE NON-ASBESTOS BINDERS." (Def.'s Br. (Doc. 127) at 4; (Doc. 127-22) at 2.) The purchase order stated that work would start on approximately February 1, 1973, (Doc. 127-22 at 3), and it did not require the use of non-asbestos products other than for calcium silicate materials, (see id. at 2-4). On May 29, 1973, Duke Power's agent forwarded to Defendant an addendum and revision to the specification BCS-1206.10 for heat

---

[3] Defendant asserts that "Thermobestos was an asbestos-containing calcium aluminate pipe covering and block insulation product manufactured at the time by Johns-Manville Corporation." (Def.'s Br. (Doc. 127) at 4 n.1.) Plaintiffs do not contest this assertion. (See Pls.' Resp. (Doc. 146).)

- 30 -

insulation that restricted the use of asbestos-containing
materials by replacing all references to "Thermobestos" with
"calcium silicate," (Doc. 127-6 at 3, 5), and references to
"asbestos cement" with "insulating cement," (id. at 3).
Consistent with Duke Power's requirement that all calcium
silicate materials be asbestos-free, (see Doc. 127-22 at 2), in
the bill of materials that Defendant submitted in July 1973 for
the turbines and boiler feed pumps, the calcium silicate pipe
coverings and block insulation were not listed as including
asbestos. (Doc. 127-7 at 5-8.) On August 14, 1973, Duke Power
recommended that Westinghouse accept Defendant's bid and award
it the contract to supply insulation for the turbines and boiler
feed pumps, (Doc. 127-11 at 2), which Westinghouse did on
August 27, 1973, (Doc. 127-12 at 2). Plaintiffs have not come
forward with evidence sufficient to suggest a genuine dispute of
material fact as to these findings. (See Pls.' Resp. (Doc.
146).)

Second, this court finds, as Defendant argues, (see Def.'s
Reply (Doc. 157) at 3), that Defendant did supply certain
asbestos containing products, namely asbestos finishing cloth,
asbestos paper, and asbestos yarn, (Doc. 127-7 at 5-8). In
Defendant's July 16, 1973 bid to Westinghouse, Covil indicated
that the cloth, yarn, and paper listed in the bid included

asbestos. (Id.) The bid also included a bill of materials that Covil intended to use in certain areas of the turbines and boiler feed pumps to fulfill the bid. (Id. at 5-8.) This bid was accepted by Duke Power and Westinghouse. (Doc. 127-11 at 2; Doc. 127-12 at 2.)

This court does not find that Plaintiffs' assertion that "documents from Duke Power demonstrate that asbestos-containing insulation was indeed used in multiple areas of the facility," (Pls.' Resp. (Doc. 146) at 6), undermines these findings. For example, according to the 1987 asbestos remediation report cited of Belews Creek cited by Plaintiffs, "[m]ost weld area samples were negative for asbestos." (Doc. 127-15 at 24.) According to this court's count, 65 of the 81 steam pipe samples documented in the report tested negative for asbestos. (See id. at 27-29.) In addition, although the report called for insulation to be removed, the report indicates that there were areas in which "the actual insulation material" tested negative, and that it was the cloth wrapping which contained asbestos. (Id. at 24.) This court finds that the report's analysis regarding the source and content of the asbestos materials, (id.), are consistent with the contracts supplied by Defendant, which called for asbestos-free calcium silicate pipe coverings and insulation, (Doc. 127-5 at 2), and with Defendant's assertion that it

- 32 -

supplied asbestos cloth, (Doc. 127-7 at 4-8), as Duke Power did
not require it to be asbestos-free, (see Doc. 127-22 at 2-4).

Similarly, Plaintiffs' arguments that the "turbines'
crossover piping was asbestos containing," (Pls.' Resp. (Doc.
146) at 6), do not undermine this court's findings. Plaintiffs
cite remediation reports from 1989 and 1990 for this
proposition. (Id. (citing Doc. 146-15; Doc. 146-25).) However,
the 1989 remediation report states only that workers would
"remove insulation on [the] main steam turbine," and does not
specify the material that was the source of the asbestos. (Doc.
146-25 at 3-5). Contrary to Plaintiffs' assertions, the report
also does not indicate that the asbestos was located on the
crossover piping. (Id.) In the absence of this information, this
court does not find that Plaintiffs have created a genuine
dispute of material fact as to whether the calcium silicate
insulation on the crossover piping contained asbestos.

Moreover, although the 1990 report states that remediation
work would be conducted at the "turbin[e] crossover &
precipitator hot roof," (Doc. 146-15 at 4), and that "calcium
silicate block, transite board & asbestos cloth," would be
removed, (id.), this court finds that a reasonable jury could
conclude from the report's express language that only the cloth
contained asbestos. Moreover, this finding would be consistent

- 33 -

with Westinghouse's specifications for the crossover piping, which specified non-asbestos calcium silicate, but permitted asbestos cloth. (Doc. 127-7 at 8.) For these reasons, this court does not find that Plaintiffs have created a genuine dispute of material fact as to whether the calcium silicate insulation on the crossover piping contained asbestos.

### ii. Plaintiffs have not met their burden of showing that Mr. McDaniel's exposure, to Defendant's products was sufficient under the Lohrmann test.

This court does not find direct or circumstantial evidence that Mr. McDaniel was exposed to asbestos-containing products supplied by Defendant with the frequency, regularity, and proximity required by the Lohrmann test.

Although Plaintiffs argue that there are "genuine issues of material fact regarding exposure and causation," (Pls.' Resp. (Doc. 146) at 22), Plaintiffs do not offer direct evidence that Mr. McDaniel was exposed to asbestos-containing products for which Defendant is legally responsible, (see id. at 22-24). Neither Mr. McDaniel nor Mr. Tilley were aware until the late 1980s or early 1990s that there was asbestos in the plant. (See Ken McDaniel Dep. (Doc. 146-2) at 10-11, 17; Tilley Dep. (Doc. 146-3) at 8.) Mr. McDaniel testified that he did not know whether any of the insulation at the plant to which he was

exposed had asbestos in it. (Ken McDaniel Dep. (Doc. 146-2) at 16.)

Instead, Plaintiffs present circumstantial evidence of exposure to indicate what products Mr. McDaniel may have been exposed to and with what frequency, regularity, and proximity. (See Pls.' Resp. (Doc. 146) at 5-8).

### (a) Testimony of Mr. McDaniel and Mr. Tilley

Plaintiffs present testimony from Mr. McDaniel and Mr. Tilley as circumstantial evidence that Mr. McDaniel was exposed to "asbestos insulation" for which Defendant was legally responsible. (id.). Although witness testimony may serve as circumstantial evidence that a plaintiff was "in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area, not just the product handlers, inhaled," Roehling, 786 F.2d at 1228, a reasonable jury could not conclude, on the basis of the testimony cited by Plaintiffs that Mr. McDaniel was exposed to asbestos with the frequency, regularity, and proximity required by Lohrmann.

First, Plaintiffs analogize the evidence in this matter to that in Jones v. Owens-Corning Fiberglas Corp., (Pls.' Resp. (Doc. 146) at 22-23), a Fourth Circuit decision in which the court held that the plaintiff had "presented direct testimonial

- 35 -

evidence which specifically place[s] [witnesses] in contact with [the plaintiff] on a regular basis for approximately 20 years" in an area where there were specific asbestos-containing products. Jones, 69 F.3d at 717, n.3. Plaintiffs argue that "Mr. McDaniel and his coworker testified that insulation contractors like Covil were hired to perform insulation work at Belews Creek and Mr. McDaniel would be working in close proximity." (Pls.' Resp. (Doc. 146) at 23).

This court finds that the evidence in the instant matter is distinguishable from that in Jones. This court agrees with Plaintiffs that Mr. McDaniel "recalled seeing [Defendant's] contractors remove insulation 'around 20 feet' from him." (Pls.' Resp. (Doc. 146) at 5 (citing Ken McDaniel Dep. (Doc. 146-2) at 7-8.), but unlike the witnesses in Jones, this court finds that neither Mr. McDaniel nor Mr. Tilley testified that they were aware that the insulation that the contractors removed contained asbestos or identified a specific product that was used, (see Ken McDaniel Dep. (Doc. 146-2) at 10-11, 16-17; Tilley Dep. (Doc. 146-3) at 8). Mr. Tilley stated that it is not possible to determine whether any insulating material contains asbestos by sight. (Tilley Dep. (Doc. 146-3) at 15-16.) Plaintiffs do not offer any additional evidence as to whether the insulation contained asbestos, other than citing to Mr. McDaniel's

- 36 -

testimony, (see Pls.' Resp. (Doc. 146) at 5-6), and Mr. McDaniel merely described the contractors' work as creating "dust," without specifying if it contained asbestos, (Ken McDaniel Dep. (Doc. 146-2) at 7-8). For this reason, this court finds that a reasonable jury could not conclude, based on their testimony that Defendant's employees caused Mr. McDaniel to have "frequent, regular, and proximate exposure to an asbestos-containing product for which [the defendant] is legally responsible," Starnes, 2014 WL 4744782, at *3.

Second, Plaintiffs cite Mr. McDaniel's testimony for the proposition that he would "beat asbestos insulation from piping with a valve wrench to locate steam leaks," (Pls.' Resp. (Doc. 146) at 4 (citing Ken McDaniel Dep. (Doc. 146-2) at 6)), but the only evidence on the record available to this court is that Defendant provided asbestos-free calcium silicate insulation for piping, (see discussion supra Section III.B.3.c.1 ). Thus, a reasonable jury could not conclude that the insulation was the source of the asbestos.

To the extent that the 1987 asbestos remediation report demonstrates that some pipes may have been covered in asbestos cloth, (see Doc. 127-15 at 24), which this court finds that Defendant supplied to Belews Creek, (Doc. 127-7 at 5-8), Mr. McDaniel's testimony does not establish how often he removed

- 37 -

insulation from the pipes, (Ken McDaniel Dep. (Doc. 146-2) at 6). Moreover, his testimony does not establish where in the plant he was when he beat the insulation with a wrench pipe, (id.), so it is not possible for a reasonable jury to discern whether this is the same area where remediation was performed in 1987 due to the limited presence of asbestos, (see Doc. 127-15 at 24). For this reason, a reasonable jury could not find that the presence of asbestos cloth on some steam pipes demonstrates that Mr. McDaniel had frequent, regular, and proximate exposure to an asbestos-containing product for which Defendant was legally responsible.

Third, Plaintiffs reference Mr. McDaniel and Mr. Tilley's testimony that they removed insulation from Westinghouse turbines as circumstantial evidence of exposure to asbestos insulation. (Pls.' Resp. (Doc. 146) at 4 (citing Ken McDaniel Dep. (Doc. 146-2) at 9-10; Tilley Dep. (Doc. 146-3) at 5).) However, Mr. McDaniel's testimony is that this insulation consisted of blankets encased in a flexible steel mesh, (Ken McDaniel Dep. (Doc. 146-2) at 19-20, 27), and Plaintiffs do not present additional evidence to support the assertion that this insulation product contained asbestos, (see Pls.' Resp. (Doc. 146) at 4). Moreover, neither Plaintiffs nor Defendant have presented evidence that Defendant supplied blanket-type

- 38 -

insulation, as described by Mr. McDaniel. (See id.; Def.'s Br. (Doc. 127) at 3-5).)

For these reasons, this court does not find that Plaintiffs' citation to Mr. Tilley and Mr. McDaniel's testimony establishes that Mr. McDaniel was exposed to asbestos-containing products for which Defendant was responsible with the frequency, regularity, and proximity required by the Lohrmann test.

### (b) Asbestos Abatement Records

Plaintiffs also refer to asbestos abatement records as evidence that there were asbestos-containing materials at the Belews Creek Plant. (Pls.' Resp. (Doc. 146) at 6-7.) This court does not find that a reasonable jury could conclude, on the basis of these records, that Mr. McDaniel was exposed to asbestos with the frequency, regularity, and proximity required by the Lohrmann test as a result of Defendant's actions.

First, this court does not find that Plaintiffs' citation of the 1987 asbestos remediation report establishes that Mr. McDaniel was exposed to asbestos. Although the report indicates that asbestos cloth was found covering steam pipes, requiring the removal of 750 to 800 feet of pipe, (Doc. 127-15 at 24), the majority of the steam pipe sites tested did not contain asbestos. (Id.) Moreover, as this court has found, a reasonable jury could not conclude based on Mr. McDaniel's

- 39 -

testimony that he worked in the section of the plant where this asbestos was located. (See discussion supra III.B.3.c.ii.(a).) For these reasons, a reasonable jury could not find that the presence of asbestos cloth on some steam pipes in 1987 demonstrates that Mr. McDaniel had frequent, regular, and proximate exposure to an asbestos-containing product for which Defendant was legally responsible.

Second, this court does not find that Plaintiffs' citation of the 1989 report, (Pls.' Resp. (Doc. 146) at 6), demonstrates that Mr. McDaniel was exposed to asbestos insulation from the main steam turbine. The report indicates that 200 linear feet of pipe and 4,278 square feet of insulation would be removed from a main steam turbine. (Doc. 146-25 at 2-5.) However, Plaintiffs do not provide evidence that Mr. McDaniel worked in the area where this turbine was located. (Pls.' Resp. (Doc. 146) at 6.) In the absence of this evidence, Plaintiffs' assertion that Mr. McDaniel was exposed to asbestos for which Defendant was responsible is "merely speculative." Ross, 625 F.3d at 817.

Third, Plaintiffs cite a record from 1990, (Pls.' Resp. (Doc. 146) at 6), which indicates 18,000 square feet of "calcium silicate block, transite board & asbestos cloth" would be removed from a turbine crossover and precipitator hot roof. (Doc. 146-15 at 4.) Mr. McDaniel testified that he did not

- 40 -

remove insulation from crossover piping. (Ken McDaniel Dep. (Doc. 146-2) at 28.) Thus, a reasonable jury could not conclude, based on Mr. McDaniel's testimony, that he was in proximity to the asbestos cloth on the crossover piping.

"[T]he mere proof that the plaintiff and a certain asbestos product are at the [same location] at the same time, without more, does not prove exposure to that product." Lohrmann, 782 F.2d at 1162. Although the parties have presented evidence which indicates that there was asbestos at Belews Creek, Plaintiffs have not presented "evidence of exposure to a specific product on a regular basis over some extended period of time in proximate to where the plaintiff actually worked." Lohrmann, 782 F.2d at 1162-63. For this reason, this court does not find that Plaintiffs have created a genuine dispute of material fact that Mr. McDaniel was exposed to asbestos for which Defendant was legally responsible.

Because Plaintiffs' exposure theory hinges on the premise that Mrs. McDaniel was exposed to asbestos through her husband's clothing, (See Pls.' Resp. (Doc. 146) at 1-3), and this court finds that Plaintiffs have not presented "specific facts" which would show that there is a "genuine issue for trial" regarding Mr. McDaniel's exposure to asbestos for which Defendant is legally responsible. See McLean, 332 F.3d at 718-19 (citing

- 41 -

Matsushita Elec. Indus. Co., 475 U.S. at 586-87), this court finds that summary judgment is appropriate as to all claims. Accordingly, this court will grant Defendant's motion for summary judgment.

### 2.    **Defendant did not owe a duty to Mrs. McDaniel**

Although this court has found that summary judgment is appropriate because Plaintiffs have not presented evidence which shows that there is a genuine issue for trial regarding Mr. McDaniel's exposure to asbestos, see discussion supra Section III.B.1, this court also finds, in the alternative, that summary judgment is appropriate because Defendant did not owe a legal duty to Mrs. McDaniel.

Proof of a legal duty is an essential element of both product liability and negligence claims under North Carolina law. See, e.g., Stegall v. Catawba Oil Co. of N.C., 260 N.C. 459, 464, 133 S.E.2d 138, 142 (1963); Crews v. W.A. Brown & Son, Inc., 106 N.C. App. 324, 329, 416 S.E.2d 924, 928 (1992); N.C. Gen. Stat. § 99B-5; N.C. Gen. Stat. § 99B-6. The parties argue, and this court agrees, that North Carolina state courts have not directly addressed whether manufacturers, suppliers, and distributors of asbestos-containing products owe a duty of care to the spouse or family member of a non-employee who is injured

- 42 -

as a result of asbestos, as in this matter. (See Def.'s Br. (Doc. 127) at 17; Pls.' Resp. (Doc. 146) at 24.)

As a federal court sitting in diversity jurisdiction, this court is bound to apply the jurisprudence of North Carolina's highest court. See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002). "But in a situation where the [North] Carolina Supreme court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." Id. This court may rely on intermediate appellate court decisions to "constitute the next best indicia of what state law is, although such decisions may be disregarded if [this] court is convinced by other persuasive data that the highest court of the state would decide otherwise," including by relying on "restatements of the law, treatises, and well considered dicta." Id. (internal citations and quotations omitted). This court may also look to "the practices of other states in predicting how the [North Carolina] Supreme Court would rule." Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). At the same time, federal courts applying state laws should not create or expand a state's common law or public policy. See Time Warner Entm't-Advance/Newhouse

P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314-15 (4th Cir. 2007).

Defendant argues that this court should not find that Defendant owed a duty of care to Plaintiffs, as "[a]llowing Plaintiffs' claims to proceed would . . . expand North Carolina law." (Def.'s Br. (Doc. 127) at 17.) Moreover, Defendant argues that other courts "have declined to find that employers owe their employees' family members duties to prevent asbestos from entering the employee's home," and that, "[i]f the connection in those cases is too tenuous to support a duty, then the connection in this case – which is even more attenuated because Mr. McDaniel never worked for Covil – cannot support liability, either." (Id. at 18.)

Plaintiffs argue that this court "should find that Covil owed a duty to warn Mrs. McDaniel because her asbestos exposure should have been foreseen by Covil, and other policy considerations support finding that a duty was owed." (Pls.' Resp. (Doc. 146) at 24.) Plaintiffs argue that North Carolina law imposes a "common law duty of ordinary care" to "foreseeable victims of their negligence." (Id. (citing Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006).) Acknowledging that "the majority of North Carolina's cases assessing the duty owed to third parties are decided in

- 44 -

the context of premises liability disputes and cases involving criminal actions of third parties," (id. at 25), Plaintiffs assert that foreseeability analysis is also appropriate for duty to warn matters, such as this, (id. at 25-26), because "[t]he duty that Covil owed to third parties, such as Mrs. McDaniel . . . , is identical to the duty that Covil would have owed to its own employees," (id. at 26). Finally, Plaintiffs argue that "[o]ther courts have found that a duty is owed when it is reasonably foreseeable to employers that family members are at risk of asbestos exposures and asbestos-related diseases." (Id. at 27.)

This court disagrees, finding that it would be an impermissible expansion of North Carolina law if this court were to find that Defendant owed Mrs. McDaniel a legal duty.

This court finds that foreseeability is not the correct analysis to determine whether, under North Carolina law, Defendant owed Mrs. McDaniel a legal duty. Contrary to Plaintiffs' assertions, North Carolina does not recognize a common law duty "whenever 'injury to the plaintiff was foreseeable and avoidable through due care.'" (id. at 25 (citing Stein, 360 N.C. at 328, 626 S.E.2d at 267. The full quote from Stein is that "[n]o legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care."

- 45 -

Stein, 360 N.C. at 328, 626 S.E.2d at 267 (emphasis added).
Adding the words "no legal duty exists unless" changes the
inquiry from one where a foreseeable and avoidable injury is
sufficient to create a legal duty, to one where a foreseeable
and avoidable injury is merely a necessary condition for there
to be a legal duty.

Stated in other terms, the full quote from Stein indicates
that foreseeability does not define whether a duty exists, but
rather, it determines the scope of the duty after a duty has
already been found to exist. See Copeland v. Amward Homes of
N.C., Inc., 269 N.C. App. 143, 144, 837 S.E.2d 903, 905 (2020)
(citing Chaffin v. Brame, 233 N.C. 377, 380, 64 S.E.2d 276, 279
(1951)) (holding that, under North Carolina law, defendants have
"no duty to imagine all of the harms that might be caused by
other people's negligence and then to take precautionary steps
to avoid those harms"); Sutton v. Duke, 277 N.C. 94, 108, 176
S.E.2d 161, 169 (1970) (holding that "it is inconceivable that
any defendant should be held liable to infinity for all the
consequences which flow from his act," and that "some boundary
must be set" (internal quotations omitted)).

Rather than relying on foreseeability, North Carolina
courts find that "[t]he duty owed by a defendant to a plaintiff
is determined by the relationship subsisting between them."

- 46 -

<u>Durkee v. C.H. Robinson Worldwide, Inc.</u>, 765 F. Supp. 2d 742, 748 (W.D.N.C. 2011) (citing <u>Kientz v. Carlton</u>, 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957)); <u>see also</u> <u>Pinnix v. Toomey</u>, 242 N.C. 358, 87 S.E.2d 893, 897 (1955) ("Actionable negligence presupposes the existence of a legal relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law.").

As it relates to third-party harms, specifically, North Carolina courts have held that "[t]he general rule is that there is no duty to protect others against harm from third persons," <u>King v. Durham Cnty. Mental Health Developmental Disabilities and Substance Abuse Auth.</u>, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994) (citing <u>Braswell v. Braswell</u>, 330 N.C. 363, 370-71, 410 S.E.2d 897, 901 (1991) (internal quotations omitted)), unless "a special relationship exists between parties." <u>Id.</u> (citing <u>Braswell</u>, 330 N.C. at 370-71, 410 S.E.2d at 902). Examples of special relationships under North Carolina law include parent-child, master-servant, landowner-licensee, custodian-prisoner, and institution-involuntarily committed mental patient. <u>Id.</u>

The North Carolina Supreme Court has held that a hallmark of a special relationship is whether one party exercises control over the other. <u>See, e.g.</u>, <u>Stein</u>, 360 N.C. at 329, 626 S.E.2d at

- 47 -

268 (holding that school officials did not have control over students who injured other students after exiting school bus); <u>Moore v. Crumpton</u>, 306 N.C. 618, 623, 295 S.E.2d 436, 440 (1982) (holding that "the parent of an unemancipated child may be held liable in damages for failing to exercise reasonable control over the child's behavior if <u>the parent had the ability and the opportunity to control the child</u> and knew or should have known of the necessity for exercising such control") (emphasis added).

   To find that Defendant owed Mrs. McDaniel a duty of care, this court must find that there was a special relationship between Mrs. McDaniel and Defendant. This court finds, however, that this finding would be inconsistent with the public policy principles the North Carolina Supreme Court has expressed, including the emphasis on whether the Defendant could control the third-party.

   This court finds that Plaintiffs' arguments regarding whether Defendant owed a duty to Mrs. McDaniel underscore that Defendant had no control over Mrs. McDaniel. Plaintiffs argue that Defendant "took no effective precautions," (Pls.' Resp. (Doc. 146) at 3), to "protect family members of workers exposed [to] workplace toxins," (<u>id.</u> at 2), which Plaintiffs describe, without citation, as "the provision of separate work clothing that is laundered on the work premises, separate lockers for

- 48 -

workers' street clothing, and showers for exposed workers." (Id. at 2-3.) Plaintiffs also cite Occupational Safety and Health Administration standards that employers must implement to protect their workers from asbestos to avoid take-home exposure. (Id. at 19.) Yet, Plaintiffs have not provided evidence that Defendant had either supervisory authority over Mr. McDaniel or that Defendant could have implemented these safety practices at the Belews Creek facility. In the absence of this type of control, this court finds that it would be improper under North Carolina law to find that Defendant and Mrs. McDaniel had a special relationship that would give rise to a legal duty. See, e.g., Stein, 360 N.C. at 329, 626 S.E.2d at 268; Moore, 306 N.C. at 623, 295 S.E.2d at 440.

This court also finds persuasive the authorities cited by Defendant that other courts have rejected the premise that an employer owes a duty of care to prevent take-home exposure to employees' family members. (See Def.'s Br. (Doc. 127) at 18-20 (citing Gillen v. Boeing Co., 40 F. Supp. 3d 534, 539 (E.D. Pa 2014); Quiroz v. ALCOA Inc., 243 Ariz. 560, 567, 416 P.3d 824, 831 (2018); Palmer v. 999 Quebec, Inc., 874 N.W.2d 303, 309-10 (N.D. 2016); Van Fossen v. MidAmerican Energy Co., 777 N.W.2d 689, 693 (Iowa 2009); In re Certified Question from Fourteenth Dist. Ct. of Appeals of Texas, 479 Mich. 498, 525-26, 740 N.W.2d

- 49 -

206, 222 (2007); <u>CSX Transp., Inc. v. Williams</u>, 278 Ga. 888, 889-91, 608 S.E.2d 208, 209-10 (2005); <u>In re New York City Asbestos Litig.</u>, 5 N.Y.3d 486, 493, 840 N.E.2d 115, 119 (2005).) This court finds that these courts' analyses align with North Carolina's tort law, which finds that a defendant's liability is limited by both foreseeability and a special relationship. <u>See</u> <u>Sutton</u>, 277 N.C. at 108, 176 S.E.2d at 170; <u>Stein</u>, 360 N.C. at 329, 626 S.E.2d at 268.

This court further finds that although Plaintiffs have presented authorities in which courts have found that employers have a duty to warn spouses of the risks of take-home exposures, (Pls.' Resp. (Doc. 146) at 27-32), Plaintiffs have not presented evidence that these courts would extend the logic a step further, to impose a duty on a contractor to the spouse of a non-employee. Thus, to the extent that this court may consider "practices of other states in predicting how the [North Carolina] Supreme Court would rule," <u>Wade</u>, 182 F.3d at 286, these authorities do not provide a basis for arguing that the North Carolina Supreme Court would consider there to be a special relationship between Mrs. McDaniel and Defendant.

Instead, this court finds that the North Carolina Supreme Court would not find that a duty exists between a contractor and a non-employee's spouse, because that would impose a duty where

- 50 -

the contractor does not have control over the non-employee's spouse. See Stein, 360 N.C. at 329, 626 S.E.2d at 268; Moore, 306 N.C. at 623, 295 S.E.2d at 440. In the absence of a legal duty, this court will grant summary judgment as to all claims.

IV.  **CONCLUSION**

For the reasons set forth above,

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment filed by Defendant Covil Corporation, (Doc. 125), is **GRANTED** as to all claims.

**IT IS FURTHER ORDERED** that Defendant Covil Corporation's Motion in Limine to Exclude Expert Opinion Testimony of Charles Ay, (Doc. 135), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motions in limine, (Docs. 187, 188, and 203), and Defendant Covil Corporation's remaining motions, (Docs. 137, 192, 195, 199, and 201), are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**.

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 23rd day of March, 2021.

_William L. Osteen, Jr._
United States District Judge

- 51 -